# Ballard Spahr LLP

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Joseph Slaughter
Tel: 646.346.8028
Fax: 212.223.1942
Slaughter@ballardspahr.com

Jay Ward Brown
Tel: 202.508.1136
Fax: 202.661.2299
brownjay@ballardspahr.com

June 27, 2019

*By Electronic Filing*

Hon. Edgardo Ramos
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Tamita Brown, et al. v. Netflix, et al.*, 19-cv-1507-ER

Dear Judge Ramos:

Pursuant to Rule 2.A.ii of Your Honor's Individual Practices, we write on behalf of defendants Amazon.com, Inc. ("Amazon"), Netflix, Inc. ("Netflix"), and Apple Inc. ("Apple" collectively, "Defendants") to request a pre-motion conference regarding Defendants' contemplated Rule 12(b)(6) motion to dismiss (for defendants Netflix and Apple) and Rule 12(c) motion for judgment on the pleadings (for defendant Amazon, which answered the complaint on April 22, 2019). The basis for both motions is that the doctrine of fair use provides a complete defense to Plaintiffs' copyright claims.

## Factual Background

This case concerns allegations of copyright infringement arising from a five-second scene in a feature-length documentary film entitled "Burlesque: Heart of the Glitter Tribe" (the "Film"), which each of the Defendants has distributed. The Film follows the on-stage and off-stage activities of a group of neo-burlesque dancers based in Portland, Oregon. Generally, the Film consists of footage of the individual dancers' on-stage acts, interspersed with footage of off-stage interviews, rehearsals, and scenes from their everyday lives. If the Court would like us to submit copies of the Film or Song at this time, we will be happy to do so.

Plaintiffs allege that they are the owners of the copyright in the song "Fish Sticks and Tater Tots" (the "Song"). Their allegations of infringement center on a single scene in the Film that depicts a brief portion of one dancer's act as it was actually performed at a nightclub. In this portion of her act, the dancer appears on stage as a "reverse mermaid" (*i.e.*, a creature with human legs and a fish head), but then disappears behind a piece of scenery depicting a large pot labeled "hot oil". When she again emerges into view of the audience a few seconds later, her legs have been transformed by costume into "fish sticks." At this point, for

approximately 5 seconds, she dances to a snippet from the Song—specifically, a few bars in which the lyric "fish sticks and tater tots" is repeated six times. Thereafter, music from a different song begins and the dancer continues her routine to that other music.

Plaintiffs allege in their Complaint only that "the Film contains an unauthorized performance of Plaintiffs' Song during a scene in which a woman dances to the Song while removing her clothing" and that "the Song is prominently featured in the referenced scene." Compl. ¶¶ 20-21. It is apparent that the claim for infringement is based entirely on the use in the Film of the 5-second excerpt from the Song described above.

## Legal Basis for Motion

Courts in this Circuit recognize that copyright infringement claims may be dismissed at the pleading stage based on a finding of fair use. *See, e.g.*, *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) ("this court has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim"). This is precisely the type of case that is ripe for dismissal pursuant to Rule 12. The Complaint, together with the evidence attached thereto as exhibits or incorporated by reference (including the Film and the Song), *e.g. McDonald v. West*, 138 F. Supp. 3d 448, 453 (S.D.N.Y. 2015), is all that is needed to decide the question of fair use.

In evaluating fair use, the Copyright Act specifies four non-exclusive factors that must be considered: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use on the market for the original. 17 U.S.C. § 107. This is "an open-ended and context-sensitive inquiry." *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013) (citations omitted).

1. **The Purpose and Character of the Use**

The "purpose and character" inquiry is "[t]he heart of the fair use inquiry." *Cariou*, 714 F.3d at 705. And the most important element of *that* inquiry is whether the allegedly infringing use was "transformative." *See Bill Graham Archives v. Dorling Kindersely Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006) ("Most important to the court's analysis of the first factor is the 'transformative' nature of the work."). "[T]he more transformative the new work, the less will be the significance of other factors." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (citation omitted). Whether a work is transformative depends on "whether the new work merely 'supersedes the objects' of the original creation, or instead . . . alter[s] the first with new expression, meaning, or message[.]" *Cariou*, 714 F.3d at 705.

Here, there is little question that the use of the Song in the allegedly infringing work is highly transformative. The Film is a documentary about the lives and stage acts of a group of burlesque dancers. It is intended to educate and inform its audience about this decidedly non-mainstream art form, and the backgrounds and motivations of the people who choose to engage in it. This constitutes a completely new "expression, meaning, or message" from that of the Song, which relates a humorous tale about a student's adventures on the way from the classroom to the cafeteria. Indeed, the Song's appearance in the Film is completely incidental—it is merely background music to a small piece of one dancer's actual performance

as recounted in the Film.[1]  In similar circumstances, courts have concluded that such use was transformative and protected by fair use.  *See, e.g.*, *Red Label Music Publ'g, Inc. v. Chila Prods.*, 2019 U.S. Dist. LEXIS 90159, at *29 (N.D. Ill. May 30, 2019); *Italian Book Corp., v. American Broadcasting Co.*, 458 F. Supp. 65 (S.D.N.Y. 1978).  Such is the case here as well.

### 2. The Nature of the Original Work

The inquiry into the nature of the original work is two-fold: it asks "(1) whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower."  *Blanch v. Koons*, 467 F.3d 244, 256 (2d Cir. 2006).  Defendants acknowledge that the Song is creative for the purposes of the first prong, which counsels less leeway for fair use.  By the same token, however, it is also a published work, which cuts in the other direction.  And in any event, courts in this Circuit have often noted that "the second factor may be of limited usefulness where the creative work of art is being used for a transformative purpose."  *Blanch*, 467 F.3d at 257.

### 3. The Amount and Substantiality of Portion Used

With respect to the third factor, "[t]he clear implication of this inquiry is that a finding of fair use is more likely when small amounts, or less important passages, are copied than when the copying is more extensive, or encompasses the most important parts of the original."  *Estate of Smith v. Cash Money Records*, 253 F. Supp. 3d 737, 751 (S.D.N.Y. 2017).  Thus, the operative test is "whether the quantity and value of the materials used[] are reasonable in relation to the purpose of the copying."  *Blanch*, 467 F.3d at 257.  Here, the Film contains only approximately 5 seconds of the 215-second Song (or 2.3% of the original).  Moreover, the portion used is clearly reasonable in relation to its transformative purpose in the Film.  It was not the filmmaker who selected the Song for inclusion in the Film—it simply happened be used by the dancer whose performance was recorded.  It follows naturally that the use of the Song was reasonable in relation to the Film's goal of portraying this particular burlesque act.

### 4. The Effect of the Use Upon the Potential Market

This factor asks the court to consider "not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work."  *Cariou*, 714 F.3d at 708.  Here, there simply can be no argument that the allegedly infringing use "usurps" the market for the original.  As Plaintiffs concede, the two are aimed at entirely different markets.  *Compare* Compl. ¶ 17 (alleging the Song's intended audience was children) *with* ¶ 18 (describing Film as "centered on strippers in Oregon.")

In light of the foregoing, Defendants respectfully request that the Court schedule a pre-motion conference to address the proposed motions.

---

[1] This fact illustrates that the use of the Song is actually transformative on two distinct levels—both in how it is portrayed in the Film and, underlying that, in how it is employed in the burlesque act.

Respectfully,

*s/ Jay Ward Brown*

Jay Ward Brown
Joseph Slaughter

JS/mm