

One Penn Plaza
Suite 2430
New York, NY 10119
T  212.239.1114
F  917.398.1217

**DANIEL KNOX**
Managing Attorney
dknox@knoxlaw.nyc

July 10, 2019

<u>VIA ECF</u>

The Honorable Edgardo Ramos
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   <u>Tamita Brown, et al. v. Netflix, et al.,</u>
      19-cv-1507-ER

Dear Judge Ramos:

Pursuant to this Court's Order dated July, 2, 2019, Plaintiff hereby responds to Defendants' letter, dated June 27, 2019, in which they seek to dismiss Plaintiffs' complaint on the basis of fair use.

## Counterstatement of Facts

This case concerns copyright infringement arising from the unauthorized reproduction and performance of ten-seconds of Plaintiffs' song entitled "Fish Sticks n' Tater Tots" (the "Song") within the movie "Burlesque: Heart of the Glitter Tribe."  Defendants have and/or continue to broadcast the movie to hundreds of millions of individual subscribers.

The first ten seconds of the Song is played in the movie from approximately 29:54 -30:04.  During this time, an observer will see a scantily clad woman dancing while they hear plaintiff Tamita Brown's voice repeating the chorus of the Song over a snare drum  To the extent relevant at this time, and contrary to Defendants' contention, the woman does not appear to be dressed as a fish stick, nor is there any indication given that this is the case.

Defendants incorrectly characterize the Song as "mere background music."  The song is an unmistakably integral part of the scene, used to highlight the dancer's transition from "reverse mermaid to food"[1]

---

[1] The film includes an explanation of the transition from the dancer herself beginning the 29:08

## Legal Argument in Opposition

In reviewing a motion under Rule 12(b)(6), the Court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor (*La Faro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 [2d Cir. 2009] internal quotation marks omitted). In other words, falling short of clearly establishing fair use on the basis of the complaint, Defendants' motion must be denied (*see TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 [2d Cir. 2016]).

Congress enumerated four nonexclusive factors for courts to consider in evaluating fair use: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work (17 U.S.C. § 107).

### 1. The Purpose and Character of the Use

#### A. Statutory Uses

The Second Circuit recognized that the purpose and character of the use is the heart of the inquiry (*Blanch v. Koons*, 467 F.3d 244, 251 [2d Cir. 2006]). The most appropriate starting point, then, is perhaps the statutory uses identified by Congress in the preamble to § 107: criticism, comment, news reporting, teaching, scholarship, and research (*TCA Television Corp.*, 839 F.3d at 179).

There is no question, however, that the striptease performance during which the Song was played does not fall into any of the foregoing categories.

#### B. Transformative Character

Turning the inquiry to the transformative character of the scene, where Defendants apparently prefer to begin, the Court's analysis should focus on "whether the new work merely 'supersedes the objects' of the original creation, or instead . . . alter[s] the first with new expression, meaning, or message" (*Cariou v. Prince*, 714 F.3d 694, 705 [2d Cir. 2013]).

Contrary to Defendants' contention, however, there is absolutely nothing transformative about the use of the Song here. A recording of the Song, unaltered and appreciable of the original, is performed for approximately ten seconds in the subject scene in the film. The Song was simply incorporated into the routine, thus there is no new expression, meaning or message thereof. Accordingly, no transformative work was created here (*see TCA Television Corp.*, 839 F.3d at 181-83 [holding that recitation of a copyrighted comedic routine within a dramatic play was not transformative of the original work]).

Defendants also attempt to discount the prominence of the Song in the particular scene and argue that other courts have concluded that small uses were transformative fair use, citing *Red*

*Label Music Publ'g, Inc. v. Chila Prods.*, 2019 WL 2297465 (N.D. Ill. May 30, 2019) and *Italian Book Corp. v. American Broadcasting Co.*, 458 F. Supp. 65 (S.D.N.Y. 1978). However, the facts in the cases on which Defendants rely are markedly distinct from those at bar.

In *Red Label Music*, the defendant produced a biographical documentary that contained small portions of the plaintiff's copyrighted work, "The Superbowl Shuffle" – a song recorded by the team members of the 1985 Chicago Bears. The court found that the film used the copyrighted work as part of the historical record (*id.* at *5). Defendants' use of the Song is not commentary, nor does it use the song in any historical context.

In *Italian Book Corp.*, a news team filmed various activities at the San Gennaro Festival, including portions of the parade, capturing a band on a parade float that was playing the plaintiff's copyrighted music. The court noted noted that the news team had no advance knowledge that a band would come along playing the defendant's or any other song, and the court found that the appearance of the song in the news broadcast was fair use. As discussed below, this case bears no similarity to the one at bar.

Rather, the facts of this case are strikingly similar to those in *Byrne v. British Boradcasting Corp.*, 132 F.Supp.2d 229 (S.D.N.Y. 2001). In *Byrne*, defendant BBC sought partial summary judgment in its favor on the basis of fair use in a case where it filmed a live broadcast of a radio program that used a certain copyrighted song as its introductory theme and then used a 'snippet' of the copyrighted song in its own broadcast.

It was particularly noted that the infringing individual was familiar with the radio show, as a he had previously visited the studio during an airing of the program, and periodically would visit the program's website (*Byrne v. Britich Broadcasting Corp.*, 132 F.Supp 2d at 231). The news organization "transformed the raw footage into a story suitable for television broadcast", which used three seconds of the copyrighted song (*id.*). The court denied the motion and the parties settled.

Here, it is clear that the makers of the film were familiar with the subject routine and had prior knowledge that the Song would be used therein. The film contains footage of other rehearsals and practice sessions, which reasonably suggests that they previewed this performance as well. Indeed, the film contains footage of an interview with the particular dancer which was necessarily recorded in advance, as she can be seen making the very fish-head she is later wearing in the subject scene.

Commercial Purpose

Commercial exploitation of a copyrighted work weighs heavily against fair use (*e.g. TCA Television Corp.*, 839 F.3d at 183-84; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 570 [1994]; *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 449 [discussing that use for profit is presumptively unfair]).

Each of the Defendants is a for-profit entity that charges a fee to consumers to view the film in question. There is very little question that the use of the Song here is a commercial one with the purpose of making profit.

Accordingly, this Court should find that the first factor weighs heavily in favor of Plaintiffs and against Defendants.

### 2. Nature of the Copyrighted Work

The second factor, the nature of the copyrighted work, also weighs in Plaintiffs' favor. Creative expression created for public dissemination is at the core of copyright's protective purposes and fair use is more difficult to establish when such works are copied (*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 [1994]).

Defendants concede that the Song is a creative expression created for public dissemination. Further, as explained above, the use of the Song was not transformative.

Accordingly, the Court should find that the second factor also weighs heavily in favor of Plaintiffs and against Defendants.

### 3. Amount and Substantiality of Use

The third statutory factor requires consideration of "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." (17 U.S.C. § 107[3]). "The 'clear implication' of this inquiry 'is that a finding of fair use is more likely when small amounts, or less important passages, are copied than when the copying is more extensive, or encompasses the most important parts of the original'" (*Estate of Smith v. Cash Money Records, Inc.*, 253 F.Supp.3d 737, 751 [S.D.N.Y. 2017] quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 221 [2d Cir. 2015]). The test is "whether the quantity and value of the materials used [ ] are reasonable in relation to the purpose of the copying" (*Blanch. v. Koons*, 467 F.3d at 257). Importantly, the copying must result in a transformative use for this consideration to be applicable (*see Estate of Smith*, 253 F.Supp.3d at 751).

As the unauthorized use of the Song was not transformative, it is simply an authorized copy and this factor cannot weigh in Defendants' favor. Furthermore, the ten-seconds of the Song that were used constitute the very heart of the Song itself, its eponymous chorus sung by plaintiff Brown herself, and is instantly recognizable to an observer.

Accordingly, the Court should find that this factor also weighs in favor of Plaintiffs.

### 4. Effect on Potential Market for Copyrighted Work

The last statutory factor focuses on whether Defendants' unauthorized use usurps demand for the Song. In weighting this factor, the Court is to consider not only the extent of market harm caused by the particular actions of Defendants, but also whether unrestricted and widespread

4

conduct of the sort engaged in by Defendants would result in a substantially adverse impact on the potential market for the original (*TCA Television Corp. v. McCollum*, 839 F.3d at 186).

Defendants argue that their use is aimed at an entirely different market than the one intended by Plaintiffs; however, this argument is patently flawed as it overlooks the unsurmountable fact that children generally do not have their own purchasing power and rely upon adults for this purpose.

The very use the song by Defendants in connection to a woman performing a strip routine has an adverse effect on the potential market for the original. Certainly, it is reasonable to conclude that the adults that relate the Song to an adult-themed film, are likely to be less inclined to consider it suitable for children.

Accordingly, the Court should find that the fourth factor also weighs heavily in favor of Plaintiffs and against the Defendants.

                                            Respectfully submitted,

                                            /s  Daniel Knox