**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                                  :
                                                                  :
TAMITA BROWN, et al.,                                             :      No. 19 Civ. 1507 (ER)
                                                                  :
                    Plaintiffs,                                   :
                                                                  :      ECF Case
                                                                  :
            -against-                                             :
                                                                  :
                                                                  :
NETFLIX, INC., et al.,                                            :
                                                                  :
                    Defendants.                                   :
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(c)**</u>

**BALLARD SPAHR LLP**

Jay Ward Brown
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone:  (202) 661-1136
Facsimile:  (202) 661-2299
brownjay@ballardspahr.com

Joseph Slaughter
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (646) 346-8028
Facsimile: (212) 223-1942
slaughterj@ballardspahr.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ............................................................................................2

ARGUMENT .................................................................................................................5

I.      STANDARD OF REVIEW .................................................................................5

II.     DEFENDANTS' USE OF THE SONG WAS A FAIR USE ...............................7

       A.     The Purpose And Character Of Defendants' Use Heavily Favors A
             Finding Of Fair Use ................................................................................8

            1.      The use was transformative ........................................................8

            2.      The use was for criticism and commentary ...............................13

            3.      The for-profit nature of the use is irrelevant..............................14

       B.     The Nature Of The Copyrighted Work Is At Best A Neutral Factor,
             And Should Be Accorded Little Weight .................................................15

       C.     The Amount And Substantiality Of The Portion Used Weighs Heavily
             In Favor Of Fair Use ..............................................................................15

       D.     The Use Has No Effect On The Potential Market .................................17

CONCLUSION............................................................................................................18

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Adjmi v. DLT Entm't Ltd.*,
   97 F. Supp. 3d 512 (S.D.N.Y. 2015)...................................................................................6, 7

*Arica Inst., Inc. v. Palmer*,
   970 F.2d 1067 (2d Cir. 1992)..............................................................................................13

*Arrow Prods. v. Weinstein Co.*,
   44 F. Supp. 3d 359 (S.D.N.Y. 2014)...............................................................................6, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................................5

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015)...........................................................................................14, 15

*Bank of N.Y. v. First Millennium, Inc.*,
   607 F.3d 905 (2d Cir. 2010)...................................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................................5

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006)....................................................................................... *passim*

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006)..........................................................................8, 15, 16, 17

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).......................................................................................8, 9, 14, 16

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013)....................................................................................... *passim*

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
   150 F.3d 132 (2d Cir. 1998)...........................................................................7, 9, 10, 14, 18

*CCA & B, LLC v. F + W Media Inc.*,
   819 F. Supp. 2d 1310 (N.D. Ga. 2011) ...............................................................................18

*Davis v. The Gap, Inc.*,
   246 F.3d 152 (2d Cir. 2001)....................................................................................8, 12, 17

*Edwards v. Raymond*,
   22 F. Supp. 3d 293 (S.D.N.Y. 2014).....................................................................................2

*Gayle v. HBO, Inc.*,
    No. 17-CV-5867 (JMF), 2018 U.S. Dist. LEXIS 73254 (S.D.N.Y. May 1,
    2018) .................................................................................................................12, 13

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
    590 F. Supp. 2d 625 (S.D.N.Y. 2008).................................................................12

*Higgins v. Detroit Educ. Television Found.*,
    4 F. Supp. 2d 701 (E.D. Mich. 1998)..................................................................12

*Hofheinz v. Discovery Commc'ns, Inc.*,
    No. 00 civ. 3802 (HB), 2001 U.S. Dist. LEXIS 14752 (S.D.N.Y. Sept. 10,
    2001) ...........................................................................................................10, 12, 13

*Italian Book Corp. v. ABC*,
    458 F. Supp. 65 (S.D.N.Y. 1978) ........................................................................12

*Kane v. Comedy Partners*,
    No. 00 Civ. 158, 2003 U.S. Dist. LEXIS 18513 (S.D.N.Y. Oct. 16, 2003) ...........................14

*Keeling v. Hars*,
    809 F.3d 43 (2d Cir. 2015)...............................................................................8, 9

*Lennon v. Premise Media Corp., L.P.*,
    556 F. Supp. 2d 310 (S.D.N.Y. 2008)..................................................................13

*Lombardo v. Dr. Seuss Enters., L.P.*,
    279 F. Supp. 3d 497 (S.D.N.Y. 2017)...............................................................6, 18

*Mattel, Inc. v. Pitt*,
    229 F. Supp. 2d 315 (S.D.N.Y. 2002)..................................................................18

*McDonald v. West*,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015)....................................................................2

*Monster Comm'cns., Inc. v. Turner Broad. Sys., Inc.*,
    935 F. Supp. 490 (S.D.N.Y. 1996) ......................................................................16

*Nat'l Ctr. for Jewish Film v. Riverside Films LLC*,
    No. 5:12-cv-00044-ODW, 2012 U.S. Dist. LEXIS 131831 (C.D. Cal. Sep. 14,
    2012) ...................................................................................................................13

*NXIVM Corp. v. Ross Inst.*,
    364 F.3d 471 (2d Cir. 2004)..............................................................8, 13, 14, 17

*Peter v. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010)...............................................................................5, 6

*Red Label Music Publishing, Inc. v. Chila Productions*,
  388 F. Supp. 3d 975 (N.D. Ill. 2019) ...................................................................10, 11, 13, 16

*Samuels v. Air Transp. Local 504*,
  992 F.2d 12 (2d Cir. 1993) ...........................................................................................................5

*Sandoval v. New Line Cinema Corp.*,
  973 F. Supp. 409 (S.D.N.Y. 1997) ..........................................................................................12

*Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*,
  756 F.3d 73 (2d Cir. 2014) .........................................................................................................14

*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016) .........................................................................................................6

*Threshold Media Corp. v. Relativity Media, LLC*,
  166 F. Supp. 3d 1011 (C.D. Cal. 2013) ...................................................................................11

*Trachtenberg v. Dep't of Educ.*,
  937 F. Supp. 2d 460 (S.D.N.Y. 2013) .......................................................................................5

*Video-Cinema Films, Inc. v. CNN, Inc.*,
  No. 98 Civ. 7128 (BSJ), 2003 U.S. Dist. LEXIS 4887 (S.D.N.Y. Mar. 31,
  2003) ...............................................................................................................................................16

*Williams v. A & E Television Networks*,
  122 F. Supp. 3d 157 (S.D.N.Y. 2015)........................................................................................2

*Wright v. Warner Books, Inc.*,
  953 F.2d 731 (2d Cir. 1991).......................................................................................................13

## Statutes & Other Authorities

2 Howard B. Abrams, The Law of Copyright § 15:52 (2006)......................................................15

17 U.S.C. § 107............................................................................................................................ *passim*

Federal Rules of Civil Procedure
  12(b)(6) ......................................................................................................................................1, 6
  12(c) ...........................................................................................................................................1, 6

Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV. 1105, 1111
  (1990).................................................................................................................................................9

Defendants Amazon.com, Inc. ("Amazon"), Netflix, Inc. ("Netflix"), and Apple Inc. ("Apple") (collectively, "Defendants") respectfully submit this memorandum in support of their motion to dismiss the complaint pursuant to Rules 12(b)(6) (for Netflix and Apple) and Rule 12(c) (for Amazon) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This copyright infringement action arises from an eight-second snippet of music allegedly discernable in the background of a brief scene in a feature-length documentary film entitled "Burlesque: Heart of the Glitter Tribe" (the "Documentary").  The Documentary runs approximately one hour and sixteen minutes and follows the on- and off-stage activities of a group of burlesque performers based in Portland, Oregon.  The Documentary examines various aspects of the performers' lives, personalities, and ideas.  It explores the performers' creative processes, their personal histories and relationships, and their views on burlesque as an art form and as a vehicle for cultural commentary.  The Documentary's format is familiar to any viewer of documentary films: footage of actual events interspersed with studio-style interviews and narrative voiceovers.

One brief segment in the Documentary explores the creative development behind one performer's act, including by showing excerpts from her actual, on-stage performance in front of a live audience, during which she dances to Plaintiffs' song (among others).  A portion of Plaintiffs' song can be heard for approximately eight seconds as used during the public performance.  Those eight seconds of the Documentary is the sum total of the alleged copyright infringement identified in the Complaint.  No discovery is necessary for this Court to rule that the Documentary's incidental and transformative use of eight seconds from the song is a fair use as a matter of law.  Accordingly, Plaintiffs' copyright infringement claims should be dismissed.

## STATEMENT OF FACTS

Plaintiffs Tamita Brown, Glen S. Chapman, and Jason T. Chapman ("Plaintiffs") allege they created and own the copyright in a 3-minute-36-second song entitled "Fish Sticks n' Tater Tots" (the "Song").  Compl., D.E. 1, ¶ 1; *see also* Declaration of Jay Ward Brown ("Brown Decl."), Ex. A (CD copy of Song).[1]  Plaintiffs assert that that the Documentary contains an unauthorized reproduction of the Song, and that Defendants are actively reproducing and distributing the Documentary.  *Id*. ¶¶ 2-3.  Plaintiffs characterize the unauthorized reproduction as occurring "during a scene in which a woman dances to the Song while removing her clothing," and they allege that the Song "is *prominently featured* in the scene."  *Id*. ¶¶ 20-21 (emphasis added).  Based upon these allegations, Plaintiffs assert five copyright-based claims for relief against all Defendants: (1) direct infringement based on public performance; (2) direct infringement based on reproduction; (3) inducement of infringement; (4) contributory infringement; and (5) vicarious infringement.  *See id*. ¶¶ 37-79.

The one-hour-sixteen-minute Documentary chronicles the lives, ideas, and acts of a group of burlesque performers in Portland, Oregon.  *See generally* Brown Decl., Ex. B (DVD copy of Documentary).  The Documentary is composed of footage of the performers' on-stage acts, interspersed with footage of backstage preparations, off-stage interviews, and scenes from their everyday lives.  The performers also provide their thoughts and commentary on their own personal biographies, how they discovered the burlesque art form, what it means to them, and

---

[1] The Court properly may consider the contents of both the Song and the Film on a motion to dismiss because they are incorporated by reference into the Complaint, *e.g.*, Compl. ¶¶ 1-5, 15-21, and Plaintiffs clearly rely upon them as the bases for their suit.  *See, e.g. McDonald v. West*, 138 F. Supp. 3d 448, 453 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59, 60-61 (2d Cir. 2016); *Williams v. A & E Television Networks*, 122 F. Supp. 3d 157, 159 & n.1 (S.D.N.Y. 2015); *Edwards v. Raymond*, 22 F. Supp. 3d 293, 297 (S.D.N.Y. 2014).

how that art form relates to and reflects a variety of social and cultural issues including, among others, sexuality, gender, religion, addiction, artistic expression, and the creative process.

The segment of the Documentary implicated in the Complaint exemplifies the context and content of the Documentary as a whole.  Immediately prior to the segment in question, the Documentary shows an interview with a journalist, Haley Sweetland Edwards, who describes the historical entanglement between burlesque and the American craft movement, and opines on burlesque's use of crafting techniques as "a means to express a commentary on society delivered in a sparkly extravaganza."  Brown Decl., Ex. B at 26:46-27:47.

The Documentary then segues to a scene in which one of the performers, who goes by the stage name Babs Jamboree, is shown using crafting techniques to prepare her costume as she discusses the creative process behind one of her acts.  Ms. Jamboree describes her fascination with the notion of a "reverse mermaid"—that is, a creature with the head of a fish and the legs of a woman.  She goes on to explain how she came up with the idea of incorporating the "reverse mermaid" concept into a food-themed show she had developed with some other performers.  As she describes it, her solution was to create a reverse mermaid costume, then have that character's "mermaid rock" transform into a vat of hot oil.  The reverse mermaid then steps behind the "hot oil" prop, undergoes a costume change—taking off her fish head and putting on brown leggings—and emerging as "fish sticks" to continue the act.  *See id.* at 27:47-30:34.[2]  Screen shots from the Documentary depicting this transformation are presented below:

_____

[2] For the Court's convenience, Defendants have provided a separate DVD exhibit containing just this three-minute segment from the Film.  *See* Brown Decl., Ex. C.







As Ms. Jamboree is describing the creative inspiration behind this portion of her act, the Documentary intercuts between footage of an interview with her, footage of her creating the "reverse mermaid" costume, and footage of Ms. Jamboree performing the act itself.  The key moment for purposes of this motion occurs as Ms. Jamboree, on stage, emerges from the vat of "hot oil" transformed into "fish sticks."  As shown in the Documentary, at that moment in her act, approximately eight seconds of the Song, consisting of the lyrics "fish sticks n' tater tots" repeated five times over a sparse drum beat, can be heard in the background.  *Id*. at 29:55-30:03. Thereafter, music from a different song begins and the Documentary shows Ms. Jamboree

continue her performance to that other music for approximately twenty seconds.  *Id*. at 30:04-
30:24.  The entire "reverse mermaid" segment featuring Ms. Jamboree lasts just under three
minutes.  The approximately eight-second audible repetition of the phrase "fish sticks n' tater
tots" is the sole basis for Plaintiffs' claims of infringement.

Plaintiffs filed the Complaint in this action on February 20, 2019.  *See* Compl.  Following
a pre-motion conference conducted on October 16, 2019, the Court granted Defendants leave to
file the present Motion to Dismiss the Complaint.  *See* Minute Entry dated October 16, 2019.

## ARGUMENT

### I.      STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Trachtenberg v. Dep't of
Educ.*, 937 F. Supp. 2d 460, 465 (S.D.N.Y. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (additional marks and citation omitted)).  The "[f]actual allegations must be enough to
raise a right to relief above the speculative level," and the complaint must plead "enough fact[s]
to raise a reasonable expectation that discovery will reveal evidence of [plaintiff's claim]."  *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  "A pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does
a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"
*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  On a motion to dismiss, in
addition to the facts alleged in the complaint, a court may consider "documents attached as
exhibits or incorporated by reference in the pleadings and matters of which judicial notice may
be taken."  *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).  "In copyright
infringement actions, the works themselves supersede and control contrary descriptions of them,

including any contrary allegations, conclusions or descriptions of the works contained in the

pleadings." *Peter v. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir.

2010) (internal marks and citations omitted).

"The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to

Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." *Bank of N.Y. v. First Millennium*,

*Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).[3]

Courts in this Circuit have consistently affirmed that copyright infringement claims may

be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c) where a comparison of

the two works at issue is sufficient to decide the question of fair use.  *See, e.g.*, *TCA Television*

*Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) ("[T]his court has acknowledged the

possibility of fair use being so clearly established by a complaint as to support dismissal of a

copyright infringement claim."); *see also Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d

497, 504 (S.D.N.Y. 2017) ("Numerous courts in this district have resolved the issue of fair use

on a motion for judgment on the pleadings by conducting a side-by-side comparison of the works

at issue."), *aff'd*, 729 F. App'x 131 (2d Cir. 2018); *Arrow Prods. v. Weinstein Co.*, 44 F. Supp.

3d 359, 368 (S.D.N.Y. 2014) (granting judgment on pleadings based on fair use where

"discovery would not provide any additional relevant information in this inquiry.  All that is

necessary for the court to make a determination as to fair use are the two [works] at issue.");

*Adjmi v. DLT Entm't Ltd.*, 97 F. Supp. 3d 512, 527 (S.D.N.Y. 2015) (granting motion for

judgment on pleadings based on fair use and noting that "[c]ourts in this Circuit have resolved

---

[3] The Complaint was filed on February 20, 2019, and defendant Amazon.com filed an Answer on April 22, 2019.  *See* Dkt. 7.  Defendants Netflix and Apple were served later and have not yet answered the Complaint.  Accordingly, this motion is styled as one under Rule 12(b)(6) as brought by Netflix and Apple, and one under Rule 12(c) as brought by Amazon.com.

motions to dismiss on fair use grounds in this way: comparing the original work to an alleged [infringing work], in light of applicable law.").

This case is properly dismissed at the outset:  The Complaint, together with the Documentary and the Song (which are incorporated into the Complaint by reference) are all that the Court needs to review to evaluate the question of fair use.  Indeed, there is no suggestion in the Complaint that any other evidence is relevant to the inquiry.  And the materials submitted to the Court on this motion demonstrate that the appearance in the Documentary of the snippet from the Song was incidental and used for commentary and criticism; was transformative; was from a previously published work; represented a small fraction of the original Song that was no more than necessary to accomplish the Documentary's objectives; and was not a market substitute for the Song itself in any way.  Consequently, this Court can readily analyze the two works at the pleading stage, and find fair use as a matter of law.

## II.     DEFENDANTS' USE OF THE SONG WAS A FAIR USE

Defendants' use of the Song constitutes fair use, a complete defense to claims of copyright infringement.  *See* 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work . . . is not an infringement of copyright.").  The Copyright Act specifies four factors that must be considered to determine whether a particular use is fair: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use on the market for the original.  This is "an open-ended and context-sensitive inquiry." *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013) (citations omitted).  The "ultimate test of fair use, therefore, is whether the copyright law's goal of promoting the Progress of Science and useful Arts . . . would be better served by allowing the use than by preventing it." *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 141 (2d Cir. 1998) (internal

marks and citations omitted).  For the reasons explained below, the four fair use factors weigh

decidedly in Defendants' favor.

### A.    The Purpose And Character of Defendants' Use Heavily Favors A Finding of Fair Use

The first statutory factor, the purpose and character of the use, is "[t]he heart of the fair

use inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006) (quoting *Davis v. The Gap,

Inc.*, 246 F.3d 152, 174 (2d Cir. 2001)).  In applying this factor, courts look to three criteria.

First, the court's primary inquiry is whether the defendant used the material for a different or

"transformative" purpose than the original.  *Id.* at 251-52.  Second, courts examine whether the

material was used for any of the preamble purposes set forth in the Copyright Act, which include

"criticism, comment, news reporting, teaching, scholarship, or research[.]" 17 U.S.C. § 107.

Finally, if the use is "transformative," the third criterion of this factor, whether the defendant is a

for-profit or non-profit entity, deserves little consideration.  *Campbell v. Acuff-Rose Music, Inc.*,

510 U.S. 569, 578-79 (1994); *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004).

These criteria overwhelmingly favor a finding of fair use here as a matter of law.

### 1.    The use was transformative

"Most important to the court's analysis of the first factor is the 'transformative' nature of

the work." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006).

Transformative works "lie at the heart of the fair use doctrine's guarantee of breathing space

within the confines of copyright . . . and the more transformative the new work, the less will be

the significance of other factors, like commercialism, that may weigh against a finding of fair

use." *Campbell*, 510 U.S. at 579 (citation omitted); *see also Keeling v. Hars*, 809 F.3d 43, 53 (2d

Cir. 2015) ("As a legal matter, the four factors do not each carry equal weight . . . indeed, some

may not be relevant at all. . . .  [T]he first factor —'the purpose and character of the use'—lies at

the heart of the inquiry . . . while the other three factors are much less important." (internal marks and citations omitted)), *cert. denied sub nom. Hars v. Keeling*, 136 S. Ct. 2519 (2016).  A work is "transformative" when the new work does not "merely supersede[ ] the objects of the original creation" but "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message[.]"  *Campbell*, 510 U.S. at 579 (citations omitted).  "If the secondary use adds value to the original—if [the original] is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings—this is the very type of activity that the fair use doctrine intends to protect for the enrichment of society."  *Castle Rock*, 150 F.3d at 141 (internal marks and citation omitted). "For a use to be fair, it 'must be productive and must employ the quoted matter in a different manner or for a different purpose from the original.'"  *Cariou*, 714 F.3d at 706 (quoting Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV. 1105, 1111 (1990)).

There can be no doubt that the use of the eight-second snippet from the Song in the Documentary is transformative.[4]  In a general sense, the Documentary is an examination of the lives, ideas, and artistry of a group of burlesque performers.  It is intended to educate and inform its audience about this unique art form, as well as the backgrounds and motivations of this particular group of people.  The Documentary also functions as a commentary on burlesque's place in society, and the various societal forces that have shaped the artists featured in the Documentary.  *See generally* Brown Decl., Ex. B.  This overarching function of the Documentary constitutes a "new expression, meaning or message" from that of the Song, which

---

[4] It bears emphasis that the question presented is whether the appearance of the snippet from the Song in the *Documentary* qualifies as fair use, not whether Ms. Jamboree's use of a portion of the Song in her act is fair.  While Defendants believe the latter is also a fair use, that question is not before the Court.

relates a humorous tale about a student's adventures on the way from the classroom to the cafeteria. *See* Brown Decl., Ex. A.

Even if the inquiry is focused on the specific segment of the Documentary in which the excerpt from the Song appears, the use is clearly transformative. The segment explores the creative process that one performer—Ms. Jamboree—engaged in to develop an act incorporating two unrelated elements: a "reverse mermaid" character and a food theme. Ms. Jamboree selected the Song, which aptly repeats the lyrics "fish sticks and tater tots," for her transformation into seafood. It is difficult to conceive of a more direct example of a use demonstrating "raw material, transformed in the creation of new information, new aesthetics, new insights and understandings" than that portrayed in this segment. *Castle Rock*, 150 F.3d at 142 (citation omitted). Indeed, showing the Documentary's audience a brief example of Ms. Jamboree's use of the Song illustrates not only the "new aesthetic" of her act, but also *the transformative process itself* by which she created that new aesthetic. This is the paradigm of a transformative use.

In similar circumstances, courts regularly find short clips incorporated into documentary films to be transformative. Indeed, at least one court in this district has opined that "it is difficult to imagine a use of a short clip in a commentary/documentary that would not qualify as transformative." *Hofheinz v. Discovery Commc'ns, Inc.*, Nos. 00 civ. 3802 (HB), 2001 U.S. Dist. LEXIS 14752, at *16 n.7 (S.D.N.Y. Sept. 10, 2001) (holding use of copyrighted film clips transformative as used in documentary about the history of science fiction films in part because defendant "had no interest in [the copyrighted material] in its own right."). Other courts confronted with similar—albeit facially much stronger—infringement claims than Plaintiffs assert here have come to the same conclusion. In *Red Label Music Publishing, Inc. v. Chila Productions*, for example, the plaintiff asserted infringement claims based upon video and audio

clips from a well-known song, the "Superbowl Shuffle," used in a documentary about the 1985

Chicago Bears football team (whose members performed the song).  388 F. Supp. 3d 975, 978-

79 (N.D. Ill. 2019), *appeal docketed*, 19-2037 (7th Cir. 2019).  Despite the fact that the clips

contained both audio and video, and were far more extensive than the use at issue here,[5] the

Court had little trouble finding that the use was transformative because "[i]t is [the documentary

itself] that now serves an expressive function," not the copyrighted song.  *Id*. at 985 (citing *Bill

Graham Archives*, 448 F.3d at 611).  Similarly, in *Threshold Media Corp. v. Relativity Media,

LLC*, the court found that a copyrighted song appearing in a scene in a pseudo-documentary film

about online "catfishing" was "highly transformative," notwithstanding that the song was a focal

point of the scene in which it appeared and substantial portions of the song (between 16 and 41

seconds) were played at least four times.  166 F. Supp. 3d 1011, 1017-19 (C.D. Cal. 2013)

(describing use in film), 1022-23 (explaining transformative nature of use).

　　　　The challenged use here is transformative on two different levels.  On one level, Ms.

Jamboree's use of the Song in her live stage act is transformative in that it incorporates a snippet

of the Song as a small piece of a new artistic work unrelated to the original.  And at the second

level, the Documentary is transformative in that it takes Ms. Jamboree's act and uses it to

illustrate a broader commentary on the burlesque art form and the creative process and

personalities behind it.

　　　　In addition, that the snippet from the Song appears at all in the Documentary is both

incidental and coincidental.  The filmmakers did not select the Song themselves or specifically

intend that it appear in the Documentary—rather, they set out to document the creative process

---

[5] The Court noted that the Bears documentary used 59 seconds of video footage from
"Superbowl Shuffle," *Red Label Music*, 388 F. Supp. 3d at 985, as compared to the eight seconds
of audio at issue here.

behind Ms. Jamboree's "reverse mermaid" act, including her performance of the act on stage, and it happens that she chose a portion of the Song to use in her act.  Courts reviewing similar situations have had little trouble concluding that such coincidental use was transformative and fair.  For example, in *Italian Book Corp. v. ABC*, the court found transformative fair use where a news broadcast at a street fair captured a copyrighted song in the background.  458 F. Supp. 65, 68-71 (S.D.N.Y. 1978).  The court explained that the "incidental and fortuitous reproduction . . . of a work located in the scene of an event being reported" was a paradigmatic example of fair use, and that therefore the fair use defense "must be sustained."  *Id.* at 71.  Other courts have reached the same conclusion in analogous circumstances.  *See, e.g.*, *Sandoval v. New Line Cinema Corp.*, 973 F. Supp. 409, 413 (S.D.N.Y. 1997), *aff'd*, 147 F.3d 215 (2d Cir. 1998) (incidental use of photos as part of movie set was transformative); *Higgins v. Detroit Educ. Television Found.*, 4 F. Supp. 2d 701, 705-06 (E.D. Mich. 1998) (incidental use of song in educational program was transformative).  Indeed, even Plaintiffs do not allege that the use of the snippet of the Song in the Documentary was anything other than incidental and coincidental, nor could they so allege:  The Documentary itself, including the context in which the lyric from the Song appears, makes plain that the intent was to capture the act, not the Song.[6]

---

[6] The fact that the alleged infringement was incidental and fortuitous also supports dismissal of the Complaint on an entirely separate ground: that the use was *de minimis*.  In cases alleging copyright infringement, "[t]he *de minimis* doctrine essentially provides that where unauthorized copying is sufficiently trivial, the law will not impose legal consequences."  *Davis*, 246 F.3d at 172 (internal marks and citations omitted).  That doctrine is applicable here, where the snippet in question was but a tiny piece of the Song itself and an even more trivial component of the Film. *See, e.g.*, *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 632 (S.D.N.Y. 2008) (use was *de minimis* where copyrighted image appeared for only "a few seconds at a time" over the course of a three-minute scene that was itself part of a longer film); *Gayle v. HBO, Inc.*, No. 17-CV-5867 (JMF), 2018 U.S. Dist. LEXIS 73254, at *7 (S.D.N.Y. May 1, 2018) (use was *de minimis* where graffiti appeared briefly in background of television program), *appeal dismissed*, 2018 U.S. App. LEXIS 33035 (2d Cir. Sept. 13, 2018).

## 2.    The use was for criticism and commentary

The Second Circuit repeatedly has held that "there is a strong presumption that factor one favors the defendant if the allegedly infringing work fits the description of uses described in § 107." *NXIVM Corp.*, 364 F.3d at 477 (quoting *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991)); *see also Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1077 (2d Cir. 1992) (same).

That presumption applies to the Documentary here.  The non-fiction nature of the Documentary signals to the viewer that it is presented as a commentary and/or critical evaluation of the burlesque art form, as well as the unique confluence of factors that led to its development and that led this particular group of performers to find their artistic homes within this non-mainstream art form.  The Documentary is replete with exactly the kinds of cultural and social insights and opinions that a viewer would expect to find in cultural commentary of this type, on topics such as gender, sexuality, and the artistic process.  Courts in similar circumstances regularly recognize that documentary films offer "criticism" or "comment" as contemplated by section 107.  *See, e.g.*, *Lennon v. Premise Media Corp., L.P.*, 556 F. Supp. 2d 310, 322 (S.D.N.Y. 2008) (documentary examining debate between evolution and intelligent design); *Hofheinz*, 2001 U.S. Dist. LEXIS 14752, at *11-16 & n.7 (documentary about history of horror films); *Red Label Music*, 388 F. Supp. 3d at 984 (documentary about 1985 Chicago Bears football team); *Nat'l Ctr. for Jewish Film v. Riverside Films LLC*, No. 5:12-cv-00044-ODW, 2012 U.S. Dist. LEXIS 131831, at *7-8 (C.D. Cal. Sep. 14, 2012) (documentary about Jewish author Sholem Aleichem).  The same is true of the Documentary in this case.[7]

---

[7] It is irrelevant that the cultural commentary offered in the Film is about burlesque, which some might view as a "low-brow" art form.  *Cf.* Compl. ¶ 18 (describing film as "centered on strippers in Oregon.").  Regardless of one's views on the merits of a particular subject, fair use protects all aspects of human endeavor.  *Bill Graham Archives*, 448 F.3d at 609 ("No less a recognition of

### 3. The for-profit nature of the use is irrelevant

Finally, while courts applying the first fair use factor consider whether the allegedly infringing work has a commercial or a non-profit educational purpose, *see Cariou*, 714 F.3d at 708, the Supreme Court has made clear that, where material is used for a transformative purpose favored by section 107, the defendant's status as a commercial entity does not create any presumption of unfairness. *Campbell*, 510 U.S. at 584; *see also NXIVM Corp.*, 364 F.3d at 477 ("The Supreme Court in *Campbell* rejected the notion that the commercial nature of the use could by itself be a dispositive consideration."). That is because "nearly all of the illustrative uses listed in the preamble paragraph of § 107. . . are generally conducted for profit." *Campbell*, 510 U.S. at 584 (internal marks and citation omitted); *see also Cariou*, 714 F.3d at 708 (same); *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014) (recognizing that "almost all" media enterprises are commercial and therefore assigning "relatively little weight" to this factor (alterations and citation omitted)); *Castle Rock*, 150 F.3d at 141 ("We . . . do not give much weight to the fact that the secondary use was for commercial gain."); *Kane v. Comedy Partners*, No. 00 Civ. 158, 2003 U.S. Dist. LEXIS 18513, at *9 (S.D.N.Y. Oct. 16, 2003) ("the Supreme Court has discounted the force of commerciality in applying a fair use analysis").

Because the use of the Song in the Documentary was transformative and for the purpose of commentary, the "commercial" factor is of little—if any—significance. "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579. Courts in this Circuit repeatedly have deemed this factor largely irrelevant to the fair use analysis

---

biographical value is warranted in this case simply because the subject made a mark in pop culture rather than some other area of human endeavor.").

where a work was transformative.  *See, e.g.*, *Authors Guild v. Google, Inc.*, 804 F.3d 202, 219

(2d Cir. 2015) (commercial motivation deemed of little significance where there was a "highly

convincing transformative purpose, together with the absence of significant substitutive

competition."), *cert. denied*, 136 S. Ct. 1658 (2016); *Blanch*, 467 F.3d at 254 (where new work

was substantially transformative, "[w]e therefore discount the secondary commercial nature of

the use" (alteration and citation omitted)); *Arrow Prods., Ltd. v. Weinstein Co.*, 44 F. Supp. 3d

359, 370 (S.D.N.Y. 2014) ("[T]he court does not place very much significance on this part of the

first fair-use factor given the transformative nature of the work.").

**B.      The Nature Of The Copyrighted Work Is At Best A Neutral Factor, and
          Should Be Accorded Little Weight**

In assessing the nature of the copyrighted work, courts consider "(1) whether the work is

expressive or creative, . . . with a greater leeway being allowed to a claim of fair use where the

work is factual or informational, and (2) whether the work is published or unpublished, with the

scope for fair use involving unpublished works being considerably narrower."  *Blanch*, 467 F.3d

at 256 (quoting 2 Howard B. Abrams, The Law of Copyright § 15:52 (2006)).

While the Song is a creative work, it is undisputed that the Song has long been published

and is available to the public on highly-trafficked websites such as Apple iTunes and YouTube*,*

*see, e.g.*, Compl. ¶ 53, which weighs in favor of fair use.  In any event, the law is clear that "the

second fair-use factor has limited weight" when the use is transformative.  *Blanch*, 467 F.3d at

257; *see also Bill Graham Archives*, 448 F.3d at 612 ("the second factor may be of limited

usefulness where the creative work of art is being used for a transformative purpose.").

**C.      The Amount And Substantiality Of The Portion Used Weighs Heavily In
          Favor Of Fair Use**

As to the third factor, "the amount and substantiality of the portion used in relation to the

copyrighted work as a whole," 17 U.S.C. § 107, a court considers not just the quantity used, but

"whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Cariou*, 714 F.3d at 710 (alteration omitted) (quoting *Blanch*, 467 F.3d at 257). The secondary use "'must be [permitted] to "conjure up" at least enough of the original' to fulfill its transformative purpose." *Id*. (quoting *Campbell*, 510 U.S. at 588).  This factor weighs heavily in favor of fair use, for at least two reasons:

 *First*, the eight-second snippet of the Song comprises just 3.7% of its total length.  *See* Brown Decl., Ex. A (the Song).  "The Second Circuit has consistently found fair use in cases where only a small portion of the original work was used." *Video-Cinema Films, Inc. v. CNN, Inc.*, No. 98 Civ. 7128 (BSJ), 2003 U.S. Dist. LEXIS 4887, at *10 (S.D.N.Y. Mar. 31, 2003); *see also Monster Comm'cns., Inc. v. Turner Broad. Sys., Inc.*, 935 F. Supp. 490, 495 (S.D.N.Y. 1996) (use of only 2.1% of original work "strongly favors" finding of fair use); *Red Label Music*, 388 F. Supp. 3d at 986 (use of 2% of audio and 17% of video of song favored finding of fair use).  Moreover, while the Documentary does use the specific lyrics from which the Song takes its name, it does so without the Song's music (apart from a faint drum track behind the intonation of the words), and it uses only a portion of the Song's chorus in which the lyrics appear. *Compare* Brown Decl., Ex. B at 29:55-30:03 (portion of Song used in Documentary), *with* Ex. A at 1:07-1:36 (full chorus of Song with music).

 *Second*, the Documentary's use of the Song is "reasonable in relation" to its purpose. *Cariou*, 714 F.3d at 710 (citation omitted).  The Song appears in a portion of the Documentary in which Ms. Jamboree explains the creative process through which she developed her act.  Central to that process is the combination of two ideas: creating a "reverse mermaid" character, and integrating it into a show with an overall theme of food.  Ms. Jamboree's solution to that creative quandary was to have the reverse mermaid transform into fish sticks by immersing herself in a

vat of hot oil.  The Documentary could not have adequately presented this creative process to its viewers without showing the transformation itself—which is the precise portion of the act, and therefore of the Documentary, in which the lyrics from Plaintiffs' Song appears.

**D.    The Use Has No Effect On The Potential Market**

Finally, the fourth factor weighs in favor of fair use because the eight-second snippet of the Song, incorporated into the Documentary solely through its use as background music for Ms. Jamboree's "reverse mermaid" act, is not a substitute for the Song itself and therefore does not affect its potential market.  As the Second Circuit stated in *Cariou*, "[w]e have made clear that 'our concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work.'"  714 F.3d at 708 (quoting *Blanch*, 467 F.3d at 258).  A secondary use "usurps" the market "where the infringer's target audience and the nature of the infringing content is the same as the original."  *Id*. at 709.  In other words, "[t]he focus . . . is on whether defendants are offering a market substitute for the original."  *NXIVM Corp.*, 364 F.3d at 481.  "The more transformative the secondary use, the less likelihood that the secondary use substitutes for the original."  *Cariou*, 714 F.3d at 709 (alteration and citation omitted); *Bill Graham Archives*, 448 F.3d at 614-15 (secondary use does not affect the market for the original where it is "transformatively different from their original expressive purpose"); *accord Davis*, 246 F.3d at 175 (fair use will be found where harm "resulted from a transformative secondary use").

The eight seconds of the Song "used" in the Documentary does not usurp the Plaintiff's audience for the Song as it in no way acts as a market substitute.  Indeed, for all of the reasons explained in Section II.A.1 above, the use of the snippet from the Song in the Documentary is highly transformative and therefore does not affect the market for the original under established Second Circuit precedent.  *Cariou*, 714 F.3d at 709.  Plaintiffs allege that they "created the Song

with children being the intended audience."  Compl. ¶ 17.  They further allege that the

Documentary is "centered on strippers in Oregon," *id*. ¶ 18, and that the alleged infringement

occurs "during a scene in which a woman dances to the Song while removing her clothing," *id*.

¶ 20.  Presumably, these allegations are intended to demonstrate that Defendants have somehow

tarnished the Song by causing it to be associated with the adult themes of the Documentary.  But

that is irrelevant under copyright fair use law.  The focus of the inquiry for the fourth fair use

factor is on whether the allegedly infringing use "usurps" the relevant market.  *Cariou*, 714 F.3d

at 708.  Moreover, courts have consistently held that, as a matter of law, an adult-themed work

cannot usurp the market for a work aimed at children, as the markets are entirely different.  *See,*

*e.g.*, *Lombardo*, 279 F. Supp. 3d at 512 (noting that there was "virtually no possibility" of

usurpation where original work was "a children's book intended for an all-ages audience" and

allegedly infringing work was "clearly intended for adult audiences"); *Mattel, Inc. v. Pitt*, 229 F.

Supp. 2d 315, 324 (S.D.N.Y. 2002) ("adult" Barbie dolls featured on website did not "pose any

danger of usurping demand for Barbie dolls in the children's toys market" because the "sale or

display of 'adult' dolls does not appear to be a use Mattel would likely develop or license others

to develop"); *CCA & B, LLC v. F + W Media Inc.*, 819 F. Supp. 2d 1310, 1323 (N.D. Ga. 2011)

(finding fair use in part because "it is highly unlikely that consumers will choose an

inappropriate-for-children parody in lieu of the wholesome" original).  The fourth fair use factor

thus weighs decisively in favor of a finding of fair use.

## CONCLUSION

At bottom, the defense of fair use requires a court to evaluate "whether the copyright

law's goal of 'promoting the Progress of Science and useful Arts' . . . would be better served by

allowing the use than by preventing it."  *Castle Rock*, 150 F.3d at 141 (citations omitted).  That

question is easily answered here.  It is evident from viewing the Documentary and listening to the Song that the allegedly infringing use was incidental, transformative, minimal, and had no reasonable ability to affect—let alone usurp—the market for the Song itself.  For these reasons, and all of the reasons set forth above, the Court should enter an order dismissing Plaintiffs' claims against Defendants in their entirety, with prejudice, along with any other relief that the Court finds just and proper.

Dated:  November 13, 2019

Respectfully submitted,

**BALLARD SPAHR LLP**

  */s/ Jay Ward Brown*
Jay Ward Brown
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone:  (202) 661-1136
Facsimile:  (202) 661-2299
brownjay@ballardspahr.com

Joseph Slaughter
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (646) 346-8028
Facsimile: (212) 223-1942
slaughterj@ballardspahr.com

*Attorneys for Defendants*