UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAMITA A. BROWN, GLEN S. CHAPMAN, and JASON T. CHAPMAN,<br><br>      Plaintiffs,<br><br>    – against –<br><br>NETFLIX, INC., AMAZON.COM, INC., and APPLE INC.,<br><br>      Defendants. | **OPINION & ORDER**<br><br>19 Civ. 1507 (ER) |

Ramos, D.J.:

  Tamita Brown, Glen S. Chapman, and Jason T. Chapman (collectively, "Plaintiffs") are musicians who created the song *Fish Sticks n' Tater Tots* (the "Song). In 2017, a documentary film titled *Burlesque: Heart of the Glitter Tribe* (the "Film") depicts a group of burlesque dancers in Portland, Oregon, one of whom incorporated the Song in a performance. Amazon.com, Inc. ("Amazon"), Netflix, Inc. ("Netflix"), and Apple Inc. ("Apple") (collectively, "Defendants") are corporations that provide, among other products, video streaming services.[1] The Film is available to view on Defendants' platforms. Plaintiffs allege that the use of the Song in the Film was unauthorized, and bring suit against Defendants for willful copyright infringement. Before the Court is Defendants' joint motion to dismiss the claims against Netflix and Apple, and for judgement on the pleadings for Amazon. Doc. 28. Because the Court finds the Film's incorporation of the Song to be fair use, Defendants' motion is GRANTED.

---

[1] Streaming is the method by which film and television programs are delivered to viewers through computers and other internet-enabled devices. Compl. ¶ 23–27, Doc. 5

I.     **BACKGROUND**

    **A. Factual Background**

Plaintiffs wrote, arranged, and recorded the Song in 2011. Compl. ¶ 15. The Song, created for children, describes a student's journey from her classroom to her school cafeteria to eat fish sticks and tater tots for lunch. Defs.' Mem. in Supp. of Mot. to Dismiss ("Mem. in Supp."), Doc. 29 at 10; Decl. of Jay Ward Brown ("Brown Decl."), Ex. A ("CD of the Song"), Doc. 30. They were granted a U.S. Copyright Registration for the Song on May 1, 2012. Compl. ¶ 16.

On March 3, 2017, the Film was released on Defendants' websites.[2] Compl. ¶ 19. It chronicles the stories of a group of burlesque dancers in Portland, Oregon through interviews, backstage preparations, and on-stage performances. Mem. in Supp. at 2; Brown Decl., Ex. B ("DVD Copy of Film"). In one scene, a dancer, who goes by the stage name Babs Jamboree, performs an act in a food-themed show centered on the concept of a "reverse mermaid," which, in her telling, is a creature with the head of a fish and the legs of a woman. Mem. in Supp. at 3. During the performance, Jamboree steps behind a sign labeled "hot oil" and emerges, having removed her fish head and changed into brown leggings to appear as though she has been transformed into fish sticks. DVD Copy of Film at 27:47–30:34. During the performance, eight seconds of the Song plays, consisting of the lyrics "fish sticks n' tater tots" sung by Brown a total of five times. DVD Copy of Film at 29:55–30:03. The performance continues for approximately 20 more seconds with different songs in the background. DVD Copy of Film at 30:04–30:24. The Film is available on Defendants' websites for customers to purchase, rent, or stream. Compl. ¶¶ 22–27.

---

[2] The record is silent as to who created the Film or when.

### B. Procedural History

Plaintiffs filed the instant action on February 20, 2019, accusing Defendants of directly infringing their right to publicly perform their work under 17 U.S.C. § 106(4); directly infringing their right to reproduce their copyrighted work under 17 U.S.C. § 106(1); and of contributory and vicarious copyright infringement, as well as inducement of copyright infringement, of their rights of reproduction and public performance under 17 U.S.C. §106 (1), (4).  Compl. ¶¶ 37–79. Amazon filed an Answer on April 22, 2019.  Netflix and Apple did not answer the Complaint. On November 13, 2019, Defendants jointly filed the instant motion to dismiss the claims against Netflix and Apple pursuant to Federal Rule of Civil Procedure 12(b)(6), and for judgement on the pleadings on the claims against Amazon pursuant to Rule 12(c).  Mem. in Supp. 29.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 557). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss.  *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations and quotation marks omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

### B. Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that [for granting] a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (internal quotation marks omitted). Accordingly, a motion for judgment on the pleadings should be granted "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537*, 47 F.3d 14, 16

(2d Cir. 1995) (per curiam). The Court accepts as true the pleadings' factual allegations and draws all reasonable inferences in the non-movant's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Lombardo v. Dr. Seuss Enter., L.P.*, 279 F. Supp.3d 497, 505 (S.D.N.Y., 2017) (noting that in considering a motion for judgement on the pleading "all pleadings — including defendant's counterclaims — are taken to be true, subject to the same plausibility standard that applies on a Rule 12(b)(6) motion").

### III. DISCUSSION

Plaintiffs assert two claims of direct copyright infringement — by public performance under 17 U.S.C. § 106(4), and by reproduction under 17 U.S.C. § 106(1) — and three claims that are contingent upon direct copyright infringement — inducement of copyright infringement, contributory copyright infringement, and vicarious copyright infringement in violation of their public performance and reproduction rights. Defendants do not dispute the validity of Plaintiffs' copyright but argue that their use of the Song is fair use, which is a complete defense to direct copyright infringement and, as a result, to any claims that are contingent on the direct infringement. Plaintiffs, in turn, maintain that any fair use determination is premature at the motion to dismiss stage and that, moreover, Defendants' use was not fair.

The Court disagrees with Plaintiffs on both points and finds that Defendants' use of the song was fair. As such, the Court GRANTS Netflix and Apple's motion to dismiss pursuant to Rule 12(b)(6), as well as Amazon's motion for judgment on the pleadings pursuant to Rule 12(c).

#### A. Fair Use at the Motion to Dismiss Stage

As an initial matter, Plaintiffs argue that the factual record is too premature to engage in a fair use inquiry, and accordingly, that the motion should be denied. Pls.' Mem. in Opp'n of Mot. to Dismiss (Mem. in Opp'n), Doc. 32 at 2–3. Yet, Courts within this Circuit have consistently considered motions to dismiss and motions for judgement on the pleadings regarding copyright

5

infringement claims. *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) ("[T]his court has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim."); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (finding motion to dismiss appropriate where "where the facts necessary to establish the defense are evident on the face of the complaint."); *Lombardo*, 279 F. Supp. at 505. The Court will therefore proceed to the merits of the motion.

### B. Fair Use Defense to Direct Copyright Infringement

Copyright owners are entitled to six exclusive rights under 17 U.S.C § 106, including the rights to "perform the copyrighted work publicly" and to "perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C § 106 (4), (6). In order to state a claim for infringement, "a plaintiff must allege both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018). However, "the fair use of a copyrighted work . . . is not an infringement of copyright." 17 U.S.C § 107. The following factors are used to determine whether use is fair:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work

*Id*. Consideration of each factor is "mandatory." *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 176 (2d Cir. 2018). The Court will therefore consider each of these factors in turn.

1. *Factor One: Purpose and Character*

The first statutory factor asks the Court to consider the "purpose and character" of the reproduced work, also known as the work's "secondary use." 17 U.S.C. § 107(1). At the core of this inquiry is whether the secondary use is transformative — understood as communicating a "further purpose or different character, altering the first with new expression, meaning or message." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014) (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (U.S. 1994)). Thus, a transformative work is "one that serves a new and different function from the original work and is not a substitute for it." *Id.* at 96. The use of unaltered copyrighted material — also known as raw material — is not prohibited, and indeed, "raw material, transformed in the creation of new information, new aesthetics, new insights and understandings . . . is the very type of activity" contemplated by the fair use doctrine. *Blanch v. Koons*, 467 F.3d 244, 252 (2d Cir. 2006). The inquiry must also consider whether the copyrighted materials are for a commercial or nonprofit educational purpose, finding "the former tending to weigh against a finding of fair use." *TCA Television Corp.*, 839 F.3d at 183 (internal quotation marks omitted). Yet, a finding of commercial use is not dispositive, as "the more transformative the new work, the less significance of other factors, like commercialism." *Id*.

Plaintiffs argue that because the Song itself is "unaltered," its use cannot be transformative, and that because the subject of both works is "fish sticks," that the idea underlying the Song and the performance are "exactly the same." Mem. in Opp'n at 5. Moreover, they also suggest that record is underdeveloped as to whether the Film is a documentary, and thereby has an educational purpose, or whether its purpose is purely commercial, thereby making a finding of fair use premature at the motion to dismiss stage. *Id.* at 3. Neither of these arguments is persuasive.

7

Plaintiffs argue that "[w]hen there is no alteration from the original there can be no [fair] use." *Id.* In support, they rely primarily on *TCA Television Corp. v. McCollum*; however, the facts of that case are inapposite. In *TCA Television Corp. v. McCollum*, the secondary use not only copied the raw material, but also duplicated "the comedic purpose of the original work," understood to be its original meaning. 839 F.3d at 184. Here, while Defendants do not alter the Song and reference its concept of "fish sticks," the performance serves a "new and different function" from the Song, rather than offering merely a substitute for its tale of a student on her way to lunch. *HathiTrust*, 755 F.3d at 96. Indeed, even Plaintiffs repeatedly note the differences in purpose and character between the performance and the Song: the Song was created "with children being the intended audience," whereas the Film is "centered on strippers" and uses the Song "while a scantily clad woman . . . begins to perform a strip dance routine." Compl. ¶¶ 17–18, 20; Mem. in Opp'n at 5. These descriptions only confirm that Defendants' use transforms the Song: Whereas the Song communicates a light-hearted children's story about a student looking forward to lunch in the school cafeteria, the Film depicts decidedly mature themes that portray fish sticks not as a lunch food, but as a component of a "reverse mermaid." CD of the Song; DVD Copy of Film at 27:47–30:34. These are, undoubtedly, "new aesthetics." *Blanch*, 467 F.3d at 252.

As to whether or not the Film has a commercial purpose, Defendants argue that their status as a commercial entity is irrelevant because the Film is transformative and is a documentary, and accordingly, offers criticism or commentary. Mem. in Supp. 29 at 14. Regardless of Plaintiffs' claim that the Film is not a documentary — in contradiction of the evidence available in the record plainly demonstrating its documentary nature — the commercial nature of a work nonetheless is not determinative of the first factor analysis. DVD Copy of Film;

*Campbell*, 510 U.S. at 584 (noting that "nearly all of the illustrative uses listed in the preamble paragraph of § 107 . . . are generally conducted for profit" (internal quotations omitted)).  Even if the Film were purely commercial, as Plaintiffs allege, because the secondary use is of a transformative nature, the first factor still weighs in favor of Defendants.  *See Cariou v. Prince*, 714 F.3d 694, 708 (2d Cir. 2013) ("Although there is no question that [Defendant's] artworks are commercial, we do not place much significance on that fact due to the transformative nature of the work").

Thus, the first factor weighs in favor of Defendants.

2.  *Factor Two:  Nature of the Copyrighted Work*

The second statutory factor considers the "nature of the copyrighted work."  17 U.S.C § 107(2).  This factor "has rarely played a significant role in the determination of a fair use dispute."  *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220.  Indeed, because this analysis "inevitably involves" the first factor's transformative purpose inquiry, "the second factor may be of limited usefulness where the creative work of art is being used for a transformative purpose."  *Id.*; *Blanch*, 467 F.3d at 257.

Plaintiffs argue that the Song is intended for creative expression for public dissemination and that this factor weighs in their favor because Defendants have not provided a persuasive justification for their use.  Mem. in Opp'n at 10.  Notwithstanding Plaintiffs' characterization of the Song, the transformative nature of the Film renders the second factor "of limited usefulness." *Blanch*, 467 F.3d at 257.  And while Plaintiffs argue that Defendants have not provided an adequate justification for their use, such requirement is satisfied when the secondary use is found to be transformative.  *Google, Inc.*, 804 F.3d at 220 (finding the second factor "not dispositive" when the secondary use is transformative, even if "one (or all) of the plaintiff works were [creative]"); *Fox News Network, LLC*, 883 F.3d at 178 (finding that where the first statutory

9

factor favors secondary use due to modest transformative use — "albeit slightly" — the second factor "plays no significant role").

Accordingly, the second factor is neutral.

3.  *Factor Three:  Amount and Substantiality*

The third statutory factor considers the "amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C § 107(3). The analysis is "with reference to the allegedly copyrighted work, not the infringing work." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006). The factor "calls for thought not only about the quantity of the materials used, but about their quality and importance, too." *Campbell,* 510 U.S. at 587. The quantitative inquiry considers whether the secondary use "employs more of the copyrighted work than is necessary," whereas the qualitative inquiry asks whether the use was "excessive in relation to any valid purposes asserted under the first factor." *HathiTrust*, 755 F.3d at 96 (citing *Campbell*, 510 U.S. at 588 (1994)). If the use qualitatively amounts to "the heart" of the original work, although quantitatively minimal, the use could be considered substantial; however, use of "the heart" of the copyrighted work is not dispositive. Indeed, when the work is transformative, "the secondary use must be [permitted] to conjure up at least enough of the original to fulfill its transformative purpose." *Cariou*, 714 F.3d at 710 (citing *Campbell*, 510 U.S. at 588) (internal quotation marks omitted).

Quantitatively, the Film uses eight seconds of the Song's 190 seconds, or 4.21 percent of the Song. Mem. in Opp'n at 11; DVD Copy of Film at 29:55–30:03. Plaintiffs argue that because the segment used is repeated three times in the Song, that the total used is more accurately 12.63 percent of the Song. Mem. in Opp'n at 11. Yet Plaintiffs do not point to a single instance in which a copyrighted work's repeated refrain was counted more than once for

10

the quantitative assessment. Mem. in Opp'n at 11. This component, therefore, favors Defendants.

Repetition can, however, be considered in the qualitative inquiry. Plaintiffs argue that the segment used in the Film represents the "heart" of the Song, noting that the cited passage is the chorus that gives the Song its name and is repeated throughout the Song. Mem. in Opp'n at 11. Even assuming that this segment is the "heart" of the Song, this does not end the analysis. *See*, *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 326 (S.D.N.Y 2008) (finding that the secondary use's inclusion of a musical phrase used in 50 percent of the copyrighted material was not excessive, even though it contained the heart of the original material). Where the heart of the copyrighted work is at the core of the transformative character, use of the heart is permissible "to fulfill its transformative purpose." *Cariou*, 714 F.3d at 710; *see Lennon*, 556 F. Supp. 2d at 326 (finding it was "not clear that defendants could have used any portion of the song [to fulfill its transformational purpose] without ending up with an excerpt" at the copyrighted work's heart). Thus, use of the "heart" of a work is permissible when it is necessary to achieve its transformation. Such is the case with Defendants' use — the dance depicted in the Film requires the phrase "fish sticks and tater tots" to communicate the "reverse mermaid" transformation. Therefore, the third factor's qualitative component also favors Defendants.

Because the portion of the Song used by Defendants is neither quantitively nor qualitatively excessive, the third factor weighs in favor of a finding of fair use.

4. *Factor Four: Effect Upon the Potential Market or Value*

The fourth factor considers "the effect of the [secondary] use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor is "undoubtedly the single most important element of fair use." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566, (1985). The critical inquiry is whether the secondary use "usurps" the market of the

11

original, "where the infringer's target audience and the nature of the infringing content is the same as the original." *Cariou*, 714 F.3d at 709. In such instances, the secondary use competes with the original "so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Google, Inc.*, 804 F.3d at 223. This likelihood is closely linked to the first factor, as "the more the copying is done to achieve a purpose that differs from the purpose of the original, the less likely it is that the copy will serve as a satisfactory substitute for the original." *Id*. (citing *Campbell*, 510 U.S. at 591). Critically, the fourth factor must also consider "'not only the . . . market harm caused by the particular actions of the alleged infringer,' but also the market harm that would result from 'unrestricted and widespread conduct of the [same] sort.'" *Fox News Network, LLC*, 883 F.3d at 179 (citing *Campbell*, 510 U.S. at 590).

      Here, the fourth factor weighs decisively in favor of Defendants. Plaintiffs repeatedly acknowledge that the Film targets a different audience from their own, noting that they "created the Song with children being the intended audience," whereas the Film is "centered on strippers" and is used "during a scene in which a woman dances to the Song while removing her clothing." Compl. ¶¶ 17–18, 20. As the Film's use is transformative of the original, the potential market — children or those who would acquire the Song on behalf of children — would not "opt to acquire the copy" of a limited eight seconds of the Song "in preference to the original." *Google, Inc.*, 804 F.3d at 223 (finding that an online service deemed transformational, which allows users to view only "snippets" of books, did not create a competing substitute for the books). Put another way, it is unlikely that parents would purchase copies of the film for their minor children so that they could hear the excerpt of the Song in the Film.

Plaintiffs also argue that if such use of the Song were to become widespread, that is, "without first obtaining a license from [them]," Plaintiffs would potentially be precluded "from participating in at least two entire segments of the music industry," which they identify as "music for an individual to at least appear to dance to, and as background music" in films.  Mem. in Opp'n at 13.  Yet, "not every effect on potential licensing revenues enters the analysis under the fourth factor," and a copyright holder "has no right to demand that users take a license unless the use that would be made is one that would otherwise infringe an exclusive right." *Fox News Network, LLC*, 883 F.3d at 180 (internal quotation marks omitted).  Moreover, only impacts on "potential licensing revenues for traditional, reasonable, or likely to be developed markets should be legally cognizable." *Id*.  Here, it is unreasonable to consider the potential uses named by Plaintiffs, which were unalleged in their complaint and only provided in response to Defendants' motion.  Because Defendants met their burden by showing that the Film's secondary use would not usurp that of the original, other similarly hypothetical uses would equally not deprive them of prospective audiences.  Thus, the fourth factor weighs in favor of Defendants.

* * *

Because the first, third, and fourth factors weigh in favor of Defendants, and the second factor is merely neutral, their alleged use of the Song is fair within the meaning of 17 U.S.C § 107.  Accordingly, Plaintiffs' claims of direct copyright infringement by public performance and reproduction fail to meet the pleading standard required by Rules 12(b)(6) and 12(c).  *See Lynch*, 952 F.3d at 75 (finding the "standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that [for granting] a Rule 12(b)(6) motion for failure to state a claim").

### C. Contributory, Vicarious, and Inducement of Copyright Infringement

Plaintiffs also assert claims for inducement of copyright infringement, contributory copyright infringement, and vicarious copyright infringement in violation of their exclusive rights of reproduction and public performance under 17 U.S.C. §106 (1), (4).  Compl. ¶¶ 37–79.  While the Copyright Act does not create liability for contributory, vicarious, or inducement of copyright infringement, "the common-law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime [sic] tortfeasor."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010).  However, there can be no contributory, vicarious, or inducement of infringement where no direct infringement exists.  *Cariou*, 714 F.3d at 712.  Because Defendants have successfully invoked the doctrine of fair use, no underlying direct infringement exists.  *Fox News Network, LLC*, 883 F.3d at 176 (finding fair use is an affirmative defense to copyright infringement).  Accordingly, Plaintiffs' claims for inducement of copyright infringement, contributory copyright infringement, and vicarious copyright infringement also fail to meet the requirements of both Rules 12(b)(6) and 12(c).

### IV.   CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss and for judgement on the pleadings is GRANTED with prejudice.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 28, and to close the case.

It is SO ORDERED.

Dated:   May 27, 2020
         New York, New York

                                                      Edgardo Ramos, U.S.D.J.